UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RICHARD S. KEMBERLING, JR., | ) No. CV 05-02409-VBK |
| Plaintiff, | ) MEMORANDUM OPINION<br>) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR").  The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and remanded for further proceedings.

Plaintiff's past relevant work was as a groundskeeper for a school district, which terminated in December 2001 because of symptoms relating to a chronic asthma condition. (AR 588-589.)  The ALJ determined that Plaintiff's asthma is complicated by Aspergillus hyperactivity, hiatal hernia, and hyperlipidemia. (AR 22, Finding 3.) Based on the evidence in the record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, but must avoid concentrated exposure to dust, fumes, etc. (Id., Finding 6.)  Thus, although he is unable to perform any of his past relevant work (Id., Finding 7), based on the testimony of a vocational expert ("VE"), it was determined that there are a significant number of jobs in the national economy that he can perform, such as information clerk.  Therefore, he was found to not be under a disability. (AR 23, Findings 12, 13.)

Indeed, there is extensive evidence in the record documenting Plaintiff's condition.  For ten years, his treating pulmonary physician has been Dr. Chang, upon whose recommendation Plaintiff left his job as groundskeeper. (AR 86.)  It appears that outdoor work, and the accompanying exposure to environmental irritants, have a close relationship to Plaintiff's Aspergillus condition. (See, id.) Further, Dr. Chang repeatedly performed spirometry testing.[1]  The record contains results of spirometry testing, which demonstrated a

---

[1] Spirometry is "a pulmonary function test used to help diagnose or assess a lung disorder or to monitor treatment... The spirometer records the total volume of air breathed out, known as the forced vital capacity (FVC).  It also records the volume of air breathed out in one second, known as the forced expiratory volume in one second (FEV).  In obstructive lung disease (such as asthma...), the FEV/FVC ratio is reduced because the airways are narrowed, thus slowing expiration." (See, American Medical Association Encyclopedia of Medicine at p. 932.)

moderate level of restriction in December 2001. (AR 167.)  In a letter dated February 4, 2003, Dr. Chang stated, in pertinent part, "[Plaintiff] consistently has pulmonary function tests that show moderately severe obstruction.  These have not improved in a remittent fashion." (AR 547.)

On October 21, 2003, Dr. Chang completed a "Multiple Impairments Questionnaire" in which he cited clinical findings which included abnormal pulmonary function tests, persistent rhonchi refractory to oral steroids, and markedly elevated IgE antibody levels. (AR 556.) He reported a frequency of treatment every three months, and assessed that Plaintiff could stand or walk one hour in an eight-hour day, noting in a handwritten portion in the margin the existence of exercise dyspnea (difficult or labored breathing), and wheezing, which occurred at Plaintiff's previous work site. (AR 557.)  In another note, he indicated that Plaintiff could not stand or walk continuously in a work setting because of exercise-induced wheezing and dyspnea. Dr. Chang precluded Plaintiff from lifting. (AR 558.)  In particular, his explanatory note on the questionnaire is as follows:

> "Asthma, wheezing worsens with physical activity in current working environment (landscape maintenance)."

(AR 558.)

He placed a question mark next to a question which asked whether Plaintiff could do a full-time competitive job that requires activity on a sustained basis (AR 560), and in response to a question as to what degree Plaintiff could tolerate work stress, he wrote, "If stress means increased aerobic exercise, he would not tolerate moderative [sic] activities." (AR 561.)  He indicated that Plaintiff would require unscheduled work breaks more than twice a day for at least 15

1 | to 20 minutes. (AR 561.)

2 | The ALJ specifically rejected Dr. Chang's "extreme limitations in the questionnaire" for several reasons which are articulated in his decision. (See AR at 20.) The ALJ principally concluded that the limitations assessed by Dr. Chang "are, in large part, related to and caused by the requirements of the [Plaintiff's] past work." (Id.) The ALJ cited pulmonary function studies after December 2002 which, he concluded, show only mild restriction and obstruction, and the ALJ's own interpretation is that Dr. Chang's treating notes "do not show any acute asthma exacerbation." (Id.) This interpretation of the progress notes, along with assertedly infrequent (e.g., quarterly) visits to Dr. Chang, and a lack of emergency room visits or hospitalization, all suggested to the ALJ, "improvement in the [Plaintiff's] asthmatic symptoms with treatment and avoidance of allergens and pulmonary irritants associated with his past work as a groundskeeper." (Id.) In other words, the ALJ interpreted the medical records as demonstrating that after Plaintiff was away from his work for a year, specifically, commencing in December 2002, his asthma condition and associated symptoms improved to the extent that he was able to perform light work with environmental restrictions. Dr. Chang apparently did not view the results of his examination and treatment of Plaintiff in the same fashion. As noted, on February 4, 2003, he opined that Plaintiff has consistently demonstrated pulmonary function tests that show a moderately severe obstruction. (AR 547.) This was his conclusion despite Plaintiff receiving "multiple and high doses of medications." (Id.) But, Dr. Chang was not Plaintiff's only treating physician. Thus, the Court turns to the conclusions and opinions of Plaintiff's treating internist, Dr. Li.

4

1         Plaintiff has seen Dr. Li on a regular basis (every one to six
2    months) for treatment of asthma and other conditions since November
3    1988. (AR 515-520.)  The ALJ accepted that portion of Dr. Li's
4    opinion, which he rendered in a "Multiple Impairments Questionnaire"
5    (AR 515-522), that Plaintiff should be precluded from exposure to
6    allergens. (AR 19-20.) Otherwise, the ALJ rejected the balance of Dr.
7    Li's assessed limitations because, in his view, they were not
8    supported by the medical records. (AR 20.)  This is an insufficient
9    basis from which the Court can assess whether substantial evidence
10   supports the ALJ's conclusions.  A bare reference to an opinion not
11   being supported by medical records in facts prohibits effective
12   judicial review, as the Ninth Circuit has often held.  The ALJ may
13   disregard the treating physician's opinion whether or not that opinion
14   is contradicted. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.
15   1986).  However, if the ALJ chooses to do so, the ALJ  must '"'make
16   findings setting forth specific, legitimate reasons for doing so that
17   are based on substantial evidence in the record.'"' Id., citing Winans
18   v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987), quoting Sprague, 812 F.2d
19   at 1230; see also Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.
20   1983).

21        This clearly articulated rule has been often cited in later
22   decisions. (See, Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.
23   1995): "The ALJ may reject the opinion only if she provides clear and
24   convincing reasons that are supported by the record as a whole.";
25   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996): "Even if the
26   treating doctor's opinion is contradicted by another doctor, the
27   Commissioner may not reject this opinion without providing 'specific
28   and legitimate reasons' supported by substantial evidence in the

record for so doing." (Citation omitted).

None of this is present in the ALJ's decision. A generic reference to an opinion's lack of support by medical records, or a citation to infrequency of treatment,[2] are similarly inadequate and insufficient bases upon which to render a decision. Indeed, the same is true for the ALJ's basis for rejecting Dr. Chang's limitations. (See AR at 20.)

There is yet another examining physician whose opinion was similarly rejected: Dr. Jason. The ALJ rejected "the assessment from Dr. Jason, a one-time examiner..." (AR 20.)[3] Citing his own interpretation of the pulmonary function studies post-December 2002, the ALJ rejected Dr. Jason's opinion. (See, id.) This brings the Court to the principal reason for requiring a remand and further hearing in this case, which is that the ALJ provided his own interpretation of medical records to reject the opinions of three examining and treating physicians that Plaintiff suffers severe functional limitations. Because the record seems to indicate a possibility that Plaintiff's condition might have improved after he spent a year away from his outdoor job, the Court has determined not to reverse this matter for calculation and award of benefits. More evidence is required on these issues. A consultative examination by

---

[2] In this case, the Court does not view Plaintiffs' medical visits with Dr. Chang as occurring on an infrequent basis. In any event, Dr. Chang is clearly Plaintiff's primary treating physician for his asthma condition, and his opinion should be evaluated from that perspective.

[3] Consultative examinations, when obtained by the Commissioner, are usually one-time events. The Court has never before observed an ALJ or the Commissioner depreciate the value of a consultative examination because it is the product of one contact between physician and patient.

a qualified pulmonologist or rheumatologist is required.  Further, the interpretation of the treatment notes Drs. Li and Chang, and how these treatment notes support or do not support the opinions of these physicians as to Plaintiff's functional limitations, are issues which must be examined by a medical expert.  Finally, the ALJ will need to reexamine and redetermine Plaintiff's credibility, which he rejected in his decision. (<u>See</u> AR at 20-21.)  The Court is far from convinced that Plaintiff's subjective complaints are out of proportion to the medical records, and in any event, this factor, in and of itself, is clearly an insufficient basis upon which to reject credibility.  Moreover, citation to assertedly infrequent doctor visits is equally unpersuasive in this case.  This leaves the ALJ's reliance on a brief statement by Plaintiff that he mows the grass at home on occasion. (AR 21.)  If this is the only evidence, aside from asserted inconsistency with medical records, or asserted infrequent treatment, the rejection of Plaintiff's subjective complaints rests on extremely thin ice.  On remand, all of the matters herein will be addressed.

**IT IS SO ORDERED.**

DATED:  December 2, 2005


/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE

7